GASTON WILBUR and J. P. RUSSELL *vs.* ABRAM FRADENBURGH, ELIZA A. his wife, and JACOB HENDRICKS.

It was not the object of the act of 1848, to enable a married woman to take property by gift, grant or devise, as she could do that before the act was passed. Its purpose was to enable the wife to take and hold property as a *feme sole,* not subject to the disposal of the husband, nor liable for his debts. It enables her to take such separate estate from any person other than her husband.

The act does not create any new disability. It was always competent for a husband not at the time indebted, to make an advancement and provision for his wife. She could not take by grant directly from him, but a conveyance could be made to a trustee for her benefit, and if made in good faith and without intent to defraud creditors, it would be upheld against subsequent creditors of the husband.

The act of 1848, has not changed the law, in this respect. A solvent husband, acting in good faith and without design to defraud his creditors, may still convey property to a trustee, for the benefit of his wife.

Wilbur *v.* Fradenburgh.

Before the act, it was necessary that the trustee should continue to hold the title, as it could not vest in the wife without subjecting the property to the control of the husband, and rendering it liable for his debts. Now, however, as a married woman may hold property as a *feme sole,* the trustee can safely convey to her the legal title to land of which she is the equitable owner.

The validity of a deed made by a husband, as a provision or advancement for his wife, to a trustee, since the act of 1848, depends upon the same circumstances of good faith and solvency which would be considered in testing the validity of such an advancement made before that act took effect.

Such a conveyance cannot be impeached by a subsequent creditor of the grantor, unless it appears that it was made with a fraudulent intent.

Where a husband possessing a considerable amount of personal property, enjoying a fair credit, and indebted at the time, only to an inconsiderable amount, the greater part of which was afterwards paid, conveyed property to another, and the latter immediately conveyed the same to the wife of the former, as a provision or advancement, for her; and the wife erected a dwelling house thereon, with moneys which had been given to her, by her husband, for that purpose, in small sums, from time to time, during a period of several years before the transfer was made; *Held,* that these circumstances repelled any presumption of fraud arising from the husband's indebtedness at the time of the transfer.

*Held also,* that whether the husband's indebtedness was sufficient in amount to afford reasonable evidence of a fradulent intent in the transfer, could only be determined by comparing it with the amount of his property; and that in the absence of any proof upon that subject, there was nothing to impeach the transfer; and it must be deemed to have been made in good faith and without intent to defraud creditors.

And the husband having, after the conveyance of the property to his wife was made, paid a sum due upon a mortgage which was a lien thereon when he purchased, and which he assumed to pay, as part of the purchase money; *Held,* that such payment could not be considered as voluntary, or in fraud of creditors, he being liable to make it.

The circumstance that an assignee for the benefit of creditors constitutes the assignor his agent to transact the business, is not, alone, sufficient to show that the assignment was made with fraudulent intent.

O N the 14th day of October, 1857, the defendant Abram Fradenburgh was the owner of a lot of land situate in the village of Yonkers, Westchester county, which he had purchased a few months previous. He had for several years prior as well as subsequent to that time, been engaged in the blue stone business in Yonkers. On that day,

(October 14, 1857,) he executed a conveyance of said lot to one Anson B. Hoyt, and said Hoyt immediately thereafter executed another conveyance of the same, to the defendant Eliza A. Fradenburgh, wife of the said Abram Fradenburgh. The consideration of said conveyances was merely nominal; their object being to transfer the title. Both deeds were recorded very soon after their execution.

The defendant Abram Fradenburgh at the time of the said transfer to his wife, owed some small business debts, and was indebted to Messrs. S. & N. B. Fitch in about the sum of $2000, (which he afterwards paid.) He also possessed a considerable amount of personal property, consisting of stock in trade, claims, &c. and enjoyed a fair credit. The transfer to his wife was openly done, and was well known to the parties with whom he was dealing, including the Fitches. It was even consented to by them. Soon after the transfer of the said lot to Mrs. Fradenburgh, she proceeded to erect upon the same, a dwelling house, for about the sum of $4000, which amount had been given to her by her said husband in small sums throughout several years preceding, for the purpose of procuring a home for herself and children, and which house ever since its erection was so occupied by her.

The dealings between the plaintiffs and the said Abram Fradenburgh, first commenced in the month of April, 1858. They sold and delivered to him merchantable stone at different times, and to a considerable amount, and he made them sundry payments on account thereof. Their business relations continued until the failure of Fradenburgh, which occurred on the 4th day of October, 1859, at which date he executed a general assignment of his property and effects for the benefit of his creditors, to the defendant Jacob Hendricks, (who was his father-in-law.) The balance that Fradenburg then owed the plaintiffs was about the sum of $500. The plaintiffs put their claims

in judgment, one for $361.20, docketed February 28, 1860, and the other for $242.64, docketed March 16, 1860, and upon the return of executions unsatisfied, instituted this action to set aside the said conveyances, and also the said assignment, on the ground that they were made by the said Abram Fradenburgh to defraud his creditors, and the plaintiffs as such creditors.

The plaintiffs also claimed that they were entitled to recover in this action about the sum of $650, being the amount of a mortgage on said lot held by Ethan Flagg, when Fradenburgh purchased it, and which mortgage he assumed and agreed to pay, as part of the consideration money, the whole consideration of the lot being $1250, and which mortgage was in the month of December, 1858, in fact paid off and discharged by the said Fradenburgh with the promissory note of one of his customers, but which was given for work done by Fradenburgh for him, prior to the commencement of the dealing between the plaintiffs and said Fradenburgh.

The case was tried before Hon. W. W. SCRUGHAM, one of the justices of this court, at the Westchester special term.

*J. W. Tompkins* and *E. Whitaker*, for the plaintiffs.

*R. W. Van Pelt*, for the defendants.

SCRUGHAM, J.   It was not the object of the act of 1848, to enable a married woman to take property by gift, grant or devise, as she could do this before that act was passed; but, on receiving it, if it was personal property, it immediately became the property of her husband, and if real estate, he took an estate in it, and was entitled to its possession.

The personal property, and his interest in the real estate, could then be taken for his debts; and the purpose of the

statute was to enable the wife to take and hold property as a *feme sole*, not subject to the disposal of the husband, nor liable for his debts. It enables her to take this separate estate from any person other than her husband. The object of the exception is apparent; for if it had not been made, an insolvent husband would have been enabled by the statute to place all of his property in the hands of his wife, where it would not be liable for his debts.

The act does not create any new disability. The wife could not before it was passed, take the property of her husband, and hold it free of the claims of his creditors existing at the time of the transfer, nor can she now. It was, however, always competent for a husband who was not at the time indebted, to make an advancement and provision for his wife. She could not take by grant directly from him, because of the marital relation and the legal fiction that husband and wife are but one person, but a conveyance could be made to a trustee for her benefit, and if made in good faith and without intent to defraud creditors, it would be upheld against subsequent creditors of the husband.

The act of 1848, has not changed the law in this respect. The solvent husband, acting in good faith and without design to defraud his creditors, may still convey property to a trustee for the benefit of his wife. Before the act it was necessary that the trustee should continue to hold the title, as it could not vest in the wife, without subjecting the property to the control of the husband, and rendering it liable for his debts.

Now, however, as a married woman may hold property as a *feme sole*, the trustee can safely convey to her the legal title to land of which she is the equitable owner.

The relation of trustee and *cestui que trust* existed between Anson B. Hoyt and Eliza A. Fradenburgh, from the time he took the coveyance from Abram Fradenburgh until he conveyed the property to her. He held the legal

Wilbur *v.* Fradenburgh.

title to land of which she was the equitable owner, and his conveyance vested that title in her.

The validity of the deed from the husband is not affected by the act of 1848, but depends—as its design was confessedly to make an advancement or provision for the wife out of the husband's property—upon the same circumstances of good faith and solvency which would be considered in testing the validity of such an advancement made before that act took effect.

No part of the debt for which the judgments were recovered, upon which this action is founded, accrued before the conveyance to Hoyt; and therefore that conveyance cannot be impeached in this action, unless it appears that it was made with fraudulent intent. Abram Fradenburgh is shown to have been indebted at that time to S. & N. B. Fitch in the sum of $2000. They were informed by him, before the transfer, of his intention to make it, and knew of it at the time it was made. He was then engaged in business, and his credit was good. The deeds to and from Hoyt were recorded on the 13th of November, 1857, within a month after their execution; and it does not appear that any concealment was practiced in respect to them, or any misrepresentation made in regard to the ownership of the property. All that Fradenburgh is shown to have owed at its date, appeared to have been paid early in 1858, and he continued his business until October, 1859, about two years after the transfer.

The money used for the purchase of the lot, and the building of the house upon it, was not taken out of his business at the time of the purchase, but it was an accumulation of small sums deposited with his wife, and set apart for this purpose at different times from 1852 to 1857, and the whole amount was accumulated about ten months before the transfer was made.

These circumstances repel any presumption of fraud arising from Fradenburgh's indebtedness at the time of the

transfer. Whether that indebtedness was sufficient in amount to afford reasonable evidence of a fraudulent intent in the transfer, could only be determined by comparing it with the amount of property, in stock, credits and otherwise, which Fradenburgh then possessed, and the plaintiffs gave no evidence upon this subject. They have, therefore, in my judgment, failed to impeach the transfer, and I must hold that it was made in good faith, and without intent to defraud creditors.

It is not claimed that the assignment which was made by Abram Fradenburgh to the defendant Hendricks was invalid upon its face, but it is urged that it was made with intent to defraud creditors, and that this is shown by the remarks which Fradenburgh made to Hendricks when he requested him to become the assignee, and by the subsequent conduct of the parties, under the assignment. The remarks upon which the plaintiffs rely to show that the assignment was made with intent to defraud creditors, are given in the testimony of Hendricks, as follows: "He said he would like I should sign such a paper; he thought he would have to make an assignment. He would be crowded—he wanted a chance—had a good deal of debts standing out, $3400 to $5000." These declarations are not clearly expressive of a fraudulent intent in making the assignment, but are reconcilable with a disposition to prevent his property being absorbed by a few creditors to the prejudice of the others; and upon being cross-examined as to these statements, the witness testified that Fradenburgh said he wanted to make the assignment for the benefit of his creditors; that some were pressing him, and he wanted all to have a share.

Nor is the circumstance that the assignee constituted the assignor his agent, alone sufficient to show that the assignment was made with fraudulent intent. The business which the assignor had been conducting was that of furnishing and laying stone pavements, curbs, &c. in the

town of Yonkers. Contracts for such work and materials, which had been made by him, had been partly performed at the time of the assignment, and completion of the work was necessary to entitle the assignee to demand payment of the contract price.

The assignee was not familiar with the business, nor an inhabitant of Yonkers, and had no acquaintance with those who were indebted to the assignor. That he should under such circumstances employ the assignor as his agent, was not improper, if he had confidence in his integrity; and as he was personally responsible for his agent's conduct of the business, and was possessed in his own right, of a greater amount of property than the whole value of the assigned estate, no inference of fraud can fairly be drawn from that employment.

When Abram Fradenburgh purchased the lot now belonging to his wife, he agreed with his grantor, as part of the consideration of the conveyance, to pay a portion of the sum secured to Mr. Ethan Flagg by mortgage upon this and other lands. This he did, on the 3d December, 1858. The title to the property was then in his wife, and a release from the mortgage was executed to her. By the purchase of the premises and his covenant to pay this portion of the sum secured by the mortgage to Mr. Flagg he became personally liable for its payment, and might have been compelled to pay it, by action. His act in making the payment cannot therefore be considered as voluntary, or in fraud of creditors.

As the property was at the time held by his wife, subject to the mortgage, he became substituted to the rights and interest of the orginal mortgagee in the premises.

It may be questioned whether he relinquished those rights by accepting from the mortgagee a release of the land from the lien of the mortgage, which covered other lands, and was for a much larger amount than the sum

---

paid, and whether he could lawfully do so while indebted; but I do not think that I am required to pass upon those questions in this action, which is not brought to establish or enforce such rights, but to set aside the deeds to and from Hoyt, and the assignment to Hendricks, as fraudulent.

The complaint should be dismissed, with costs.

[WESTCHESTER SPECIAL TERM, September 3, 1866. *Scrugham*, Justice.]